UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,                    :
                                                                              :
          v.                                                      :     **MEMORANDUM & ORDER**
                                                                              :     18-CR-210 (WFK)
TISHEEM RICH,                                            :
                                                                              :
                 Defendant.           :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On July 1, 2019, Tisheem Rich ("Defendant") pled guilty pursuant to a plea agreement to Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and contained in 18 U.S.C. § 3553(a).  For the reasons discussed below, Defendant is hereby sentenced to 111 months of incarceration, 2 years of supervised release, $61,534.38 in restitution, and a $200.00 mandatory special assessment.

## BACKGROUND

On July 1, 2019, Tisheem Rich ("Defendant") pled guilty pursuant to a plea agreement to Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I.    Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case.  The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines.  18 U.S.C. §

3553(c)(2).  The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form."  *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)."  *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).  Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant.  The Court addresses each in turn.

**II.   Analysis**

    **A.   The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).

    i.   <u>History and Characteristics of the Defendant</u>

Defendant was born on November 22, 1987 in Queens, New York to the non-marital union of Gregory Ingrim and Denise Rich.  Presentence Investigation Report ("PSR"), ECF No. 59 at ¶ 52.  Defendant was raised by his mother under lower-income circumstances and he had an uneventful childhood, devoid of abuse.  *Id.* ¶ 55.  Defendant has never shared a relationship with his father but is close with his step-father, who has been a father figure to him since 2005.  *Id.* ¶ 56.  He has six maternal-half siblings, with whom he shares close relationships.  *Id.* ¶ 54.  With the exception of Defendant's three youngest siblings, all family members are aware of his arrest and conviction for the instant offense and remain supportive of him.  *Id.*  Defendant has two children.  *Id.*  Defendant's youngest son was recently diagnosed with Autism.  Def. Sentencing Memorandum, ECF No. 80 at 2.

Defendant reportedly dropped out of high school in the 10th grade, and he has never earned a graduate equivalency diploma. *Id.* He was previously employed as a construction worker. *Id.* Defendant enjoys good health and has no reported history of serious illnesses or significant mental health concerns. *Id.* ¶ 60. He reported a history of marijuana use. *Id.* ¶ 62. Defendant has no known prior criminal convictions. *Id.* ¶¶ 35–36. However, of significant note, he was arrested by officers of the New York City Police Department on at least ten separate occasions. *Id.* ¶¶ 40–50. Those matters are sealed, and the dispositions could not be obtained. *Id.*

        ii.   <u>Nature and Circumstances of the Offense</u>

The investigation of the instant offense was conducted by officers of the New York City Police Department ("NYPD") and special agents of the Alcohol, Tobacco, Firearms, and Explosives ("ATF"). *Id.* ¶ 4. The investigation revealed that Defendant and his co-defendants Arthur Lilly, Lorenzo McAllister, and Joseph Pena, were involved in the robberies of two separate 7-Eleven store on two separate occasions. *Id.*

        **a.**   **The September 2, 2014 Robbery**

On September 2, 2014, Defendant and his co-defendants entered a 7-Eleven convenience store in Flushing, New York. *Id.* ¶ 5. The defendants, wearing hooded sweatshirts and obscuring their faces with masks and/or bandanas, entered the store and confronted the store clerk. *Id.* One of the defendants brandished a shotgun and demanded that the store's employee open the register. *Id.* The defendants then went into the store's office and demanded a store employee open the safe. *Id.* After the employee stated that he could not open the safe, one of the defendants threatened to shoot the safe open, but did not do so. *Id.* The defendants stole money from the register, as well as

3

money and a bag from one of the employees, and fled in a vehicle with Defendant Lilly as the getaway driver. *Id.* According to the Government, the defendants stole $1,200.00, which represents the value of the items taken as well as United States currency. *Id.*

### b. The September 16, 2014 Robbery

On September 16, 2014, Defendant and his co-defendants entered into another 7-Eleven convenience store in Flushing, New York. *Id.* ¶ 6. The defendants, wearing hooded sweatshirts and obscuring their faces with masks and/or bandanas, entered the store and confronted the victims. *Id.* One of the defendants was carrying and brandished a loaded Mossberg 500A pistol grip pump-action 12-gauge shotgun. *Id.* The defendant holding the shotgun pushed the customer to the floor at gunpoint. *Id.* He removed the customer's identification card and black Motorola flip phone from the customer's person. *Id.* The defendants then forced the store clerk to open the cash register and give them money. *Id.* They also took lottery tickets and the store owner's purse, which contained a New York State identification card, two credit cards and $102.00 in United States currency (the store owner was not present during the robbery). *Id.* In total, the defendants stole $406.00 in cash, two credit cards, a purse and an unspecified amount of lottery tickets. *Id.*

When the defendant brandishing the shotgun went to the back of the store, the customer ran out of the store. *Id.* ¶ 7. The defendants then fled the store, entered a car and drove away. *Id.* After fleeing the store, the customer flagged down a motorist who called 911. *Id.* Officers from the NYPD responded and observed a vehicle matching the description provided as the vehicle the defendants using to travel. *Id.* Officers attempted to stop the vehicle, but the defendants continued driving. *Id.* The defendants then led

4

police on a high-speed chase, weaving in and out of traffic while reaching speeds of approximately 120 miles per hour.  *Id.*  Officers also observed one of the defendants throw an item out of the window of the car.  *Id.*  The item, which was the store owner's purse, was later recovered by police.  *Id.*  After approximately 20 minutes of being chased, the defendants crashed their car into a grocery store.  *Id.*  Immediately after the crash, the defendants exited the vehicle, with the exception of Defendant Rich.  *Id.*

The Government has reason to believe that Defendant hit his head during the crash, was knocked unconscious or disoriented for a brief period and thus remained in the vehicle.  *Id.*  While law enforcement officers chased the other defendants, Defendant regained consciousness and escaped.  *Id.*  Shortly thereafter, the car burst into flames.  *Id.*  The co-defendants attempted to evade arrest but were apprehended and promptly arrested.  No post-arrest statements were made.  *Id.*

The co-defendants, Arthur Lilly, Lorenzo McAllister and Joseph Pena were transferred into federal custody on October 2, 2014.  *Id.*

Defendant was arrested on May 10, 2018, at his residence in Queens, without incident.  *Id.* ¶ 11.  On May 14, 2018, Defendant was released on a $150,000.00 unsecured bond, cosigned by four sureties.  On July 1, 2019, Defendant pled guilty to Count 4 (September 16, 2014, Robbery) and Count 5 (Brandishing of a Firearm During a Crime of Violence).  On July 31, 2020, this Court revoked Defendant's bond and he was remanded after multiple pretrial violations including failed drug tests and failure to abide by location monitoring.  ECF No. 70.

    **B.**    **The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity, from disregarding U.S. law, and from engaging in illicit activity.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Counts Four and Five of the Indictment charging him with Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). For Count Four, the maximum term of imprisonment is 20 years. 18 U.S.C. §1951(a). For Count Five, the minimum term of imprisonment is seven years and the maximum term is life. 18 U.S.C. § 924(c)(1)(A)(ii). The term of imprisonment for Count Five must be imposed consecutively to any other counts. 18 U.S.C. § 924(c)(1)(D)(ii).

The Court may impose a term of supervised release of not more than three years on Count Four, 18 U.S.C. § 3583(b)(2), and not more than five years on Count Five, 18 U.S.C. § 3583(b)(1). The maximum fine is $250,000.00 on each count, 18 U.S.C. § 3571(b); Defendant is

6

ineligible for probation, *id.* § 3561(a)(3) and (a)(2); and he must pay a mandatory special assessment of $200.00, 18 U.S.C. § 3013.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A). The guideline for Count 4 is USSG §2B3.1(a), which provides a base offense level of 20.

The loss amount incurred as part of the instant offense is greater than $20,000 but less than $95,000, per USSG §2B3.1(b)(7)(B), a 1-level enhancement is warranted.

The applicable guideline for Count 5 is USSG §2K2.4(b), which directs that the guideline sentence is the minimum term of imprisonment required by statute, in this case seven years, to run consecutively to any other term of imprisonment. PSR ¶ 12.

Based on Defendant's guilty plea, which spared the Court and the Government the burden of preparing for trial, Probation recommends, and the Government and defense counsel agree with, a 3-point reduction for acceptance of responsibility. PSR ¶¶ 18, 32, 33.

Accordingly, Defendant's total adjusted offense level is 18. Defendant has no known criminal convictions, which results in a subtotal criminal history score of zero. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of zero establishes a criminal history category of I. PSR ¶ 37. Based upon a total offense level of 18 and a criminal history category of I, the guidelines imprisonment range is 111 to 117 months of imprisonment.

Probation recommends a sentence of 111 months in custody, followed by 2 years of Supervised Release. The Government recommends a guidelines sentence of 111 to 117 months

of imprisonment. Defense counsel recommends a below guidelines sentence of 87 months of imprisonment.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). This factor is not relevant to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Defendant's co-defendants, Arthur Lilly, Lorenzo McAllister and Joseph Pena were charged under a separate docket. Defendant in this case was arrested several years after his co-conspirators because he escaped after the initial chase and was not identified as a co-conspirator until the Government continued its investigation of the instant offense. Defendant's co-defendants Lorenzo McAllister and Joseph Pena were sentenced by this Court to 105 months and 84 imprisonment respectively. Defendant Arthur Lilly was sentenced to time served, which amounted to approximately 79 months at the time of his sentencing. The Court has crafted a unique sentence for each of the Defendants based on their personal conduct, circumstances, and criminal histories. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor, which requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7). $61,534.38 in restitution shall be ordered in this case.

## CONCLUSION

A sentence of 111 months of incarceration, 2 years of supervised release, $61,534.38 in restitution, and a $200.00 mandatory special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and the addenda thereto, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

**SO ORDERED.**

s/ WFK

_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: December 13, 2021
       Brooklyn, New York